RECEIVED
JAN 0 6 2006
CLERK U.S. DISTRICT COURT
ANCHORAGE, ALASKA

Marilyn J. Kamm
Assistant Attorney General
Department of Law
Criminal Division Central Office
P.O. Box 110300
Juneau, AK 99811
(907) 465-3428
FAX: (907) 465-4043
Alaska Bar No. 7911105
Attorney for Defendants Turnbull,
Houser & Elde

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| Mark Daniel Nason, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| Craig Turnbull, et al., | ) ) |
| Defendants. | ) ) |
| | ) Case No. A04-169 CV (JKS) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ISSUE OF PUNITIVE DAMAGES**

Come now defendants Sgt. Elde and CO Houser, by and through their attorney of record, Marilyn J. Kamm, Assistant Attorney General, and hereby move this court for an order of summary judgment pursuant to Civil Rule 56 on the availability of punitive damages.[1] This motion is supported by the memorandum of law, *infra*.

**PROCEDURAL HISTORY**

---

[1] Superintendent Turnbull is not named as a party to plaintiff's claim 2.
Motion for Summary Judgment on Punitive Damages
*Nason v. Turnbull et al.,* Case A04-169 CV (JKS)
Page 1 of 10.

## 1. The Amended Complaint.

Plaintiff Mark Nason "Nason" is an inmate at Spring Creek Correctional Center "SCCC" in Seward, Alaska. He filed this suit against the Superintendent of SCCC, Mr. Craig Turnbull "Turnbull," and two of the prison's staff, Correctional Officer "CO" Andrew Houser and Sgt. Gary Elde, claiming that they violated his rights under the Eighth Amendment to the U.S. Constitution. In Claim 1 Nason alleged that on June 29, 2004, CO Houser placed him in leg irons and handcuffs behind his back while he was completely nude and escorted him across the module in full view of the other staff and prisoners. He alleged that Houser then took all of his bedding and clothing from his cell and that he was issued a "suicide gown" to wear. Nason refused to wear the gown and remained naked for seven days. Nason also claimed that on June 29, 2004, that Houser wrongfully seized all of his lined writing paper.

In Claim 2 Nason alleged that he moved to another cell on October 3, 2004, by Sgt. Elde and CO Houser in retaliation for having filed this lawsuit. He claims that when he entered the cell that dried fecal matter was on three of the walls, the light and that it was packed in the speaker box. Nason was relocated to a clean cell two to three hours later.

## II. The Order of Partial Summary Judgment.

The parties filed motions for summary judgment. *See* docket 36 and 37. Plaintiff's motion for summary judgment was denied. *See* docket 54. Defendants' cross-motion for summary judgment was granted as to all claims except the retaliation claim. *See* docket 54.

## III. The Punitive Damages Claim.

Plaintiff concedes that he was not damaged by the events in Claim 1 and 2 in his amended complaint. He does not seek any compensatory or nominal damages. The only issue addressed in this motion is whether he might recover punitive damages based

Motion for Summary Judgment on Punitive Damages
*Nason v. Turnbull et al.*, Case A04-169 CV (JKS)
Page 2 of 10.

upon the allegations in Claim 2.  For purposes of this motion only, the plaintiff's factual allegations are not disputed.

## THE FACTS

Plaintiff resides at Spring Creek Correctional Center, a maximum security prison.  He is classified maximum custody.  A classification committee assigns a custody level to a prisoner based upon the degree of staff supervision necessary to monitor and control the prisoner's behavior.  The level of custody, and degree of staff supervision, appropriate for maximum custody is set forth in 22 AAC 05.271(b)(5).

> Maximum Custody --assignment to maximum custody indicates that a prisoner requires the maximum level of supervision available within the facility due to being identified as an escape risk, the most assaultive, predatory, riotous, or seriously disruptive to the orderly administration of the facility.  A maximum custody prisoner must be placed in secure housing, with very limited program activities, with maximum supervision within the secure perimeter of the facility.  Maximum custody prisoners are not eligible for furlough, and movement within the facility requires two escorting officers using restraints as necessary and appropriate.  Movement outside the facility's perimeter, other than for court appearances, requires the superintendent's written approval, the presence of at least two officers, one of which must be armed, and the prisoner in hand and leg restraints.  If hospitalization is necessary, the prisoner must be under guard.

22 AAC 05.271(b)(5).

Plaintiff wrote a prisoner grievance on October 20, 2004, in which he sought an end to "this continuous harrassment (sic)."  Exhibit A.  He stated that he was currently involved in a good behavior program to earn privileges such as family phone calls or a book.  He said that Sgt Elde had asked him and another inmate in the program, Hapoff, what privilege they wanted on October 16th, a phone call or a book.  Nason wanted a phone call, while inmate Hapoff requested a book.  Sgt Elde cuffed Hapoff up to go to Delta module and select a book.  When Nason asked for a phone call on 10-17-04, he was told that he would have to wait until 10-20-04 to see if he had earned it.

Motion for Summary Judgment on Punitive Damages
*Nason v. Turnbull et al.,* Case A04-169 CV (JKS)
Page 3 of 10.

Nason asked for a phone call on October 20th. Sgt. Elde told him that due to an informational report filed on night shift involving him and inmate Hapoff that he would not receive a phone call that week. However, Sgt. Elde "made a big production" of bringing in another book from the library and giving it to inmate Hapoff. Nason stated that Sgt. Elde was showing favoritism and retaliating for the previous grievances and civil lawsuit that Nason had filed against him. Exhibit A.

The next day Plaintiff completed another grievance. Exhibit B. On October 21, 2004, Nason asked for an end to "Sgt. Gary Eldes' continual harassment and unprofessional behavior." He objected to his move from Bravo mod to Charlie mod on October 3, 2004. Nason claimed that his behavior had been exemplary while other inmates' behavior had not been as good. He gave as an example inmate Tony Robertson who allegedly threw fecal matter across the mod on two occasions and also put it in the mail box. Nason stated that it was unfair that he was the one to be moved to Charlie mod.

Nason objected to being placed in cell C-1 because he had heard that the former occupant of that cell, Donald Hendrix, had wiped fecal matter all over himself and the walls of the cell. Nason claimed that he was overcome by a strong stench when he was moved into the cell. He asked to be moved to the next cell that was clean, but Officer Houser refused to do so because he was told to put him in cell C-1.

Nason contacted an officer in the control room via the intercom system to complain about the cell. He claims that that officer spoke to Sgt. Elde two times on his behalf over the next 2-3 hours, but that Sgt. Elde did nothing. Finally Nason told the control room officer that he was filing an emergency verbal grievance, and asked the officer to notify the Post 1 sergeant and superintendent if Sgt. Elde refused to assist him.

After Nason threatened to file an emergency grievance, another correctional officer brought a plastic bucket to the door of Nason's cell, with a rag, sponge and spray

Motion for Summary Judgment on Punitive Damages
*Nason v. Turnbull et al.*, Case A04-169 CV (JKS)
Page 4 of 10.

bottle. Nason did not want to clean the cell himself. He again asked to be moved to the cell next to his. An hour later he was relocated. Exhibit B.

## STANDARDS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In deciding a motion for summary judgment the court views the evidence and the inferences therefrom in the light most favorable to the non-moving party. *Levin v. Knight*, 780 F.2d 786, 787 (9th Cir. 1986). Three United States Supreme Court cases have clarified what a non-moving party must do to withstand a summary judgment motion. As explained by the Ninth Circuit in *California Architectural Building Products, Inc. v Franciscan Ceramics, Inc.*, 818 F. 2d 1466, 1468 (9th Cir. 1987):

Motion for Summary Judgment on Punitive Damages
*Nason v. Turnbull et al.*, Case A04-169 CV (JKS)
Page 5 of 10.

First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, [477 U.S. 317], 106 S. Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, [477 U.S. 242], 105 S. Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)(emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1356 (1986).

**ARGUMENT**

I.  NASON'S CLAIM OF RETALIATION DOES NOT MEET THE THRESHOLD FOR AN AWARD OF PUNITIVE DAMAGES.

In *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), the Supreme Court affirmed the award of punitive damages in an action under Section 1983. Wade was a youthful offender who was housed in a Missouri reformatory for youthful first offenders. He claimed that Smith, a correctional officer, violated his rights under the Eighth Amendment, and caused him to be harassed, beaten, and sexually assaulted by other inmates. The jury awarded Wade $25,000 in compensatory damages and $5,000 in punitives. *Id.*, at 33.

While Wade was housed in administrative segregation, Smith added a third inmate to his cell. This third inmate had been placed in administrative segregation for fighting. According to Wade, Smith made no effort to find out whether another cell was available for this inmate. Just a few weeks earlier another

Motion for Summary Judgment on Punitive Damages
*Nason v. Turnbull et al.*, Case A04-169 CV (JKS)
Page 6 of 10.

inmate had been beaten to death in the same dormitory during the same shift while Smith had been on duty. Wade claimed that Smith knew or should have known that an assault against him was likely under the circumstances. *Id.*, at 32.

Punitive damages become a discretionary matter for the jury only if the plaintiff makes an adequate threshold showing. Compensatory damages, in contrast, are mandatory. *Id.*, at 52. A plaintiff reaches the threshold showing for punitive damages when the defendant's outrageous conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, at 46-47. An award of punitive damages is the result of the jury's discretionary moral judgment. *Id.,* at 52.

In *Spruytte v. Haffner*, 181 F.Supp.2d 736 (W.D. Michigan 2001) the U.S. District Court for the Western District of Michigan found the defendant correctional officers had violated the two prisoners' First Amendment rights by transferring them to other correctional institutions but that the prisoners were not entitled to an award of punitive damages. One of the prisoners, Spruytte, had written to a local newspaper in which he, *inter alia*, complained that the prison recreation directors did not do their jobs. One of the directors threatened to transfer the inmate for writing that letter or any letters in the future.

Spruytte and another inmate also began collecting information regarding the possible misuse of the prisoner benefit fund by the recreation staff. Then another inmate wrote a "St. Patrick Day Trivia Contest" that asked trivia questions about some

Motion for Summary Judgment on Punitive Damages
*Nason v. Turnbull et al.,* Case A04-169 CV (JKS)
Page 7 of 10.

of the correctional officers. Although Spruytte and Rimka admitted they had photocopied the trivia contest for another inmate, they denied that they had written the document. Nevertheless, both inmates were transferred to different institutions.

The court found that the defendants had retaliated against plaintiffs for exercising their First Amendment rights. They were awarded compensatory damages based upon the difference between what plaintiffs were paid for their library jobs at the first facility and what they were paid for the jobs which they held subsequently at the prisons to which they were transferred. They were also awarded $500 for non-economic damages. However, the court denied the request to award them punitive damages.

> Although punitive damages are available in an action such as this, the Court declines to award punitive damages because the evidence does not demonstrate that Defendants' conduct was the result of evil motive or intent or callous indifference to Plaintiffs' federally protected rights. *See Smith v. Ward,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).

*Spruytte v. Haffner*, at 745.

The facts in this case are equivalent to those in *Sprytter v. Haffner, supra.* The alleged acts of Correctional Officer Houser and Sgt. Elde do not meet the threshold for an award of punitive damages. The evidence does not demonstrate that defendants' conduct was the result of evil motive or intent or callous indifference to Nason's federally protected rights.

Nason claims that defendants moved him into a dirty cell on October 3,

Motion for Summary Judgment on Punitive Damages
*Nason v. Turnbull et al.,* Case A04-169 CV (JKS)
Page 8 of 10.

2004, to harass him as part of an ongoing dispute with him. *See* Exhibit B. But Nason did not grieve the wrongful move until October 21, 2004, two and a half weeks after it happened. And the relief he requested was the end to the harassment. *Id.* In contrast, he completed another grievance on October 20, 2004, the same day that Sgt. Elde wrongfully refused to let Nason make a telephone call. *See* Exhibit A  If the move to cell C-1 had been significant to him, one would have expected him to have grieved it earlier.

## CONCLUSION

Nason is not entitled to punitive damages in this case. His alleged facts do not meet the threshold for an award of punitive damages. Th evidence does not demonstrate outrageous conduct that was the result of evil motive or intent or callous indifference to Plaintiff's federally protected rights. *See Smith v. Ward, supra; Spruytte v. Hoffner, supra.*

Sgt. Elde and CO Houser respectfully request that this court enter its order of summary judgment in their favor.

Dated this 4 day of January, 2006, at Juneau, Alaska.

DAVID W. MÁRQUEZ
ATTORNEY GENERAL

By: *[signature]*
Marilyn J. Kamm
Assistant Attorney General

Motion for Summary Judgment on Punitive Damages
*Nason v. Turnbull et al.,* Case A04-169 CV (JKS)
Page 9 of 10.

I certify that on January 4, 2006, I caused to be mailed a true and correct copy of the foregoing with first class postage, via the U.S. Post Office to:

    Mark Nason
    SCCC
    Box 5001
    Seward, AK  99664-5001

*/s/ Marilyn J. Kamm*
Marilyn J. Kamm

Motion for Summary Judgment on Punitive Damages
*Nason v. Turnbull et al.,* Case A04-169 CV (JKS)
Page 10 of 10.

# PRISONER GRIEVANCE

| PRINT NAME | INSTITUTION - MODULE | OBSCIS NUMBER | LOG NUMBER |
|---|---|---|---|
| NASON MARK | SCCC CHARLIE | 178878 | 9181 |

**DATE OF INCIDENT:** 10-16 + 10-20

**DESCRIBE INCIDENT AND YOUR ATTEMPTS TO HANDLE IT INFORMALLY. ONE ISSUE PER GRIEVANCE.**

I am filing this Grievance alleging staff Misconduct: I am currently involved in a good behavior program to earn privileges such as family phone calls or a book. Several inmates are also involved, including Arthur Hapoff, Charlie #15. On 10-16-04 Sgt. Elde asked what I wanted this week, a phone call or a book. I stated a phone call. He asked inmate Hapoff, he requested a book. Sgt. Elde cuffed him up and allowed him to go to Delta module and select a book. I asked Sgt. Elde for a phone call on 10-17-04. He said "you'll have to wait until Wed. (10-20) to see if you've earned it". I did not point out that inmate Hapoff was given his privilege the previous day. I asked for my phone call on 10-20 (today) Sgt. Elde told me "that due to an informational report filed on night shift involving inmate Hapoff + myself, monitored conversation, I would not recieve a phone call this week, better luck next time." I asked to review this information report, he denied access to it. The exact conversation is as follows: Inmate Hapoff inquired if another inmate was going to pull a fire sprinkler. I replied for him to shut up and quit talking about it. End of Discussion. Now, hours after I was denied my phone call, Sgt. Elde made a big production of bringing in another book (this one from the library) and giving it to inmate Hapoff. Sgt. Elde is clearly showing favoritism and attempting to provoke a negative response from me. I believe this is retaliatory action due to previous Grievances and a federal civil action pending.

(Attach additional pages if necessary)

**I REQUEST THE FOLLOWING RELIEF:** (State outcome you are seeking):

An end to this continuous Harrassment.

I UNDERSTAND THAT THIS GRIEVANCE MUST BE FILED WITH THE GRIEVANCE COORDINATOR WITHIN 30 DAYS OF THE OCCURRENCE OR MY KNOWLEDGE OF THIS INCIDENT.

**DATE:** 10-20-04    **PRISONER'S SIGNATURE:** Mark Nason

I ACKNOWLEDGE RECEIPT OF THIS GRIEVANCE AND HAVE ISSUED THE LOG NUMBER ABOVE FOR REFERENCE. PLEASE REFER ANY INQUIRES ABOUT THIS GRIEVANCE TO THE ASSIGNED LOG NUMBER.

**DATE FILED IN COMPLIANCE:** 10/22/04    **GRIEVANCE COORDINATOR'S SIGNATURE:** [signature]

04-454 #2

Department of Corrections Form #808.03C
Revised: 07/95    Page 1 of 2

EXHIBIT A
PAGE 1 OF 1

# PRISONER GRIEVANCE

| PRINT NAME | INSTITUTION - MODULE | OBSCIS NUMBER | LOG NUMBER |
|---|---|---|---|
| NASON MARK D | SCCC CHARLIE | 178878 | 9781 |

**DATE OF INCIDENT:** 10-3-04

**DESCRIBE INCIDENT AND YOUR ATTEMPTS TO HANDLE IT INFORMALLY. ONE ISSUE PER GRIEVANCE.**

The following Grievance is an allegation of staff misconduct. [Specifically] what I believe to be Retaliatory action by Sgt. Gary Elde and Ofc. A. Houser for the grievances and Federal Civil Action filed against them alleging cruel and unusual punishment. I was moved from Bravo mod cell 1 to Charlie mod cell 1 at Sgt. Elde's direction. Charlie mod is modified for those inmates with poor behavior. No mirrors, no desks, no shelfs, just a bare concrete slab for a bed. I was moved despite the fact that my behavior has been exemplary for several months. While several other inmates residing in Bravo has not. Example: Tony Robertson throwing fecal matter across the mod on two occasions and putting it in the mail box. The fact that I was relocated was unfair in and of itself, However, the heart of my complaint is as follows: I asked Ofc. A. Houser what cell I was being moved to. He informed me cell Charlie #1. I inquired if it had been properly cleaned as the previous day I'd heard that inmate Donald Henderson had wiped fecal matter all over himself and the cell. He assured me that it had been. Upon entering the cell, I was overcome by a strong stench, the equivalent of a poorly maintained outhouse. I could see dried fecal matter on 3 of the walls, the light and packed in the speaker box. I immediately informed Ofc. A. Houser of this and requested to be placed in cell #2 Charlie which was also vacant. He smiled and stated "This is where I was told to put ya".

**SEE ADDITIONAL PAGE**   (Attach additional pages if necessary)

**I REQUEST THE FOLLOWING RELIEF: (State outcome you are seeking):**

An end of Sgt. Gary Eldes' continual Harassment and unprofessional Behavior.

I UNDERSTAND THAT THIS GRIEVANCE MUST BE FILED WITH THE GRIEVANCE COORDINATOR WITHIN 30 DAYS OF THE OCCURRENCE OR MY KNOWLEDGE OF THIS INCIDENT.

**DATE:** 10/21/04   **PRISONER'S SIGNATURE:** Mark Nason

I ACKNOWLEDGE RECEIPT OF THIS GRIEVANCE AND HAVE ISSUED THE LOG NUMBER ABOVE FOR REFERENCE. PLEASE REFER ANY INQUIRES ABOUT THIS GRIEVANCE TO THE ASSIGNED LOG NUMBER.

**DATE FILED IN COMPLIANCE:** 10/22/04   **GRIEVANCE COORDINATOR'S SIGNATURE:** [signature]

04-454 A 1

Department of Corrections Form #808.03C
Revised: 07/95       Page 1 of 2

EXHIBIT B
PAGE 1 OF 2

PG. 2                                                                 10-3-04

I contacted ofc. Riddla in control room via the cell intercom system and informed him that my cell was coated in dried fecal matter and the toilet was plugged up and would not flush. He spoke to SGt Elde two times on my behalf over the next 2-3 hours. SGt. Elde would not move me or come to talk to me. So I informed ofc. Riddla that I was filing an emergency verbal grievance as I felt my health was in jeopardy, and asked him to notify the Post 1 SGt and the Superintendent if SGt. Elde refused to assist. A few minutes later ofc. Spaulding (I believe his name is), brought a plastic bucket to my door with a rag, sponge and spray bottle. I informed him that was not bio hazzard gear designed for cleaning human waste, and further it was not my job to do that, I again requested to be moved to the clean vacant cell next to mine. Approximately an hour later I was relocated. Inmate Arthur Hapoff from cell CHARLIE 15 was assigned/contracted to clean cell #1. He spent nearly 6 hours with bleach and a garden hose and scrub brushes to accomplish this. (7pm - 1am). Before SGt Elde left that day, he came by my cell and postured angrily, then declared "You will go back in that cell once its cleaned up". My Health is being placed in jeopardy AS a deliberate attempt to provoke a negative response. I am currently involved in a program to earn privileges for good behavior.

EXHIBIT B
PAGE 2 OF 2

Mark