IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

RECEIVED
JAN 23 2006
CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

Mark Daniel Nason, )
    Plaintiff, )
)
vs. )
)
Craig Turnbull, et al., )
)
    Defendants. )
)

Case No. A04-169 CV (JSK)

AFFIDAVIT OF PLAINTIFF IN SUPPORT OF OPPOSITION

REGARDING ISSUE OF PUNITIVE DAMAGES

Comes now the Plaintiff Mark Daniel Nason, in opposition to the Defendants motion for summary judgement on the issue of punitive damages.

Plaintiff Mark Daniel Nason, respectfully submits to this Court that he is legally competant to provide an accurate overview of the internal proceedural workings of House 1, Spring Creek Correctional Center, Seward Alaska.

Plaintiff offers as proof that he has been confined in said House for three consecutive years.

Plaintiff regrets his inability to produce interogatories under Rules of Discovery to support this affidavit.,

Plaintiff submits to this Court that it is not due to a lack of effort on his part.

Plaintiff submitted a list of interogatories to Defendants Attorney of record (Kamm) whom declined to participate "claiming" security concerns.

1

Plaintiff discussed this issue with the previous magistrate in a hearing., With the end result being that we could discuss it at a later unfixed date if it became necessary.

I swear or affirm under penalty of perjury that the aforementioned and foregoing are true and accurate statements to the best of my knowledge:

Kamm states in her "Motion for Summary Judgement on issue of punitive damages" [Doc. No. 61-1]

That "If the move to cell C-1 had been significant to him, one would have expected him to have grieved it earlier". [Page 9 of 10 lines 6-9].

This callous observation is made due to the Plaintiffs Grievance being filed on October 21, 2004., when the incident occured on October 3, 2004.

In response the Plaintiff submits the following;

1. The situation was "significant" enough to him that he ammmended his entire complaint. [Docket 28].

2. The situation was "significant" enough that the Plaintiff filed a verbal emergency grievance and stood stationary in the center of the grossly contaminated cell for 3 hours as he pleaded to be relocated.

3. The Plaintiff did not file a written Grievance immediately upon Defendants Elde and Houser due to **his very realistic concerns of further retalitory conduct.**

4. The Grievance [Exibit B of Defendants Motion] was filed within the accepted time frames and properly processed. (i.e. 30 days of incident)

2

Kamm further states in her Motion for Summary Judgement, ""For purposes of this motion only, the Plaintiffs factual allegations are not disputed." [Page 3 of 10 lines 1-3].

Since none of the Plaintiffs facts are in dispute, the only consideration for this Court is as follows:
Were the Defendants admitted actions motivated by evil intent or did they involve reckless or callous indifference to the Federally protected rights of others...
Plaintiff submits the following analysis.,
Cell C-1 was grossly contaminated. It is a 6x9 concrete box. Three of its Four walls were liberally coated in dried human fecal matter. The intercom system and the lights were packed and coated in same.
The toilet was plugged up with what appeared to be part of a sheet.
**The cell immediately adjacent C-2 was vacant and clean.**
Plaintiff asked Officer Houser **Prior** to the relocation from cell B-1 to C-1 if the cell had been cleaned as he had heard that inmate Donald Hendrix had smeared fecal matter on himself and all over the cell. **Houser assured plaintiff that it had been.**[Exibit B Plaintiffs Motion].
Kamm attempts to excuse the Defendants behavior by claiming that Defendant Elde submitted an affidavit stating the cell Nason occupied prior to the move was in need of repair.

3

This chain of logic does not hold when the weight of common sense is placed upon it.

The repair needed to B-1 was a light switch replaced.

It is common practice that a prisoner be placed into the shower and secured while the maintenance crew promptly fixes anything wrong with the cell from a burnt out light to a broken toilet.

The only time a prisoner is relocated to charlie module lower tier housing, is when his behavior warrants it.

All lower housing in Charlie module is modified to suit special needs prisoners. The desk and chair have been removed as have the shelves and clothing hooks. The beds were taken out and replaced by a bare concrete slab.

**No penological objective existed to relocate the plaintiff to that enviornment.**

Even if the move had been with merit, no excuse exists to place a prisoners health at risk by subjecting him to that type of biohazardous enviornment.

A clean cell was less than 10 feet away.

The escorting officer was aware of the contamination.

He claims it was done at Eldes order.

Both Elde and Houser were recently served with Civil Complaints prior to this unwarranted move.

Clearly this was an intentional retalitory gesture.

Plaintiff has the right to be free from retaliation.,

Plaintiff has the right to be free from cruel and unusual punishment.

Plaintiff attempted to include an affidavit based upon personal knowledge from inmate John Bright on 1-8-06.
Mr.Bright placed the affidavit upon the table in front of his cell [Charlie #8], and informed the escorting officers that it was a legal affidavit for my use. They said that they would scan it and give it to me. The officer then exited the module with said document and did not return with it.
I spoke with the officer (Ofc Pat) via the control room intercom system at approximately 0800 hrs on 1-9-06.
I politely inquired as to the location of the legal affidavit that he took with him the previous day., He said "That is not a legal document, it is just a bunch of paper with scribbles on it." [I have known Mr.Bright for about 14 years, he is a very astute and well versed individual as regards legal matters. The subject material was "punitive cell relocations made by the present shift of officers." Ironically enough, minutes after I made inquiry as to the location of the document, both Bright and myself were told to roll up and moved to different cells.
Ms.Kamm states in her conclusion that "The evidence does not demonstrate outrageous conduct... ... or callous indifference"
The Plaintiff, speaking from personal experience, would most strongly disagree with her assessment.
The plaintiff would submit the following exibits to demonstrate to this Court that the behavior patterns of the correctional staff are not consisitant and fair. Thus showing that their actions were more likely than not motivated by evil intent.

5

Exibit 1 is a cop-out that was written to the assistant Superintendant on 12-10-05. Plaintiff was politely attempting to assertain what his alleged manipulation of the system was, after handling an issue of aggressive staff behavior through the proper channels. The Assistant Superintendants response was "I do not need to provide any other explinations".
The Plaintiff would submit that this is typical callous indifferance., (an example thereof).
Exibit 2 is a four page document that was provided to the Plaintiff by inmate Galindo-Rivera,Victor.
*The Plaintiff is not providing a copy of this documentation to the Defenses counsel due to his concerns of the documents being seized and destroyed by the defendants.
This Court did not deem fit to validate the Plaintiffs claim as regards part 1. The Plaintiff feels the reason being is that his case was not strong enough due to the Defendants refusal to participate in the discovery process and the Magistrates refusal to enforce that rule.
The Plaintiffs primary claim was that he was being unfairly and cruely punished. (i.e. outside of the normal standards).
He was forced to live in a cell without clothing for 7 days.
The only alternative being a medical smock that everyone refers to as a dress. A demeaning experience...
The Defendants Swore out affidavits that claimed I was treated as policy in House 1 dictates. (Not cruely or differently).
Plaintiff attempted to gain access to disciplinary reports of other prisoners that had fishing lines to substantiate his claim thus refuting their lies. He was denied.

If the Court will review Exibit pages 1-4., They will find that the **very same Defendants were involved** and the offense was not merely a piece of line in a towel roll., But two ripped up state issue sheets and a pair of ripped up state issue underware.

The Prisoner **was not** marched naked across the module, nor subjected to a suicide gown (that only medical has the authority to issue). He was put on an IDR for 1 for 1 exchange on his state clothing. If the Court will not treat this as a request to reconsider the Plaintiffs claim (1)., Then the Plaintiff would at least request that the Court consider the fact that the Affidavits previously filed were in fact false.

                              Further Sayeth Naught.
                    _____
                    Mark Daniel Nason Pro se

I Mark Daniel Nason declare under penalty of perjury that I have reviewed the attached declaration and that the information is true and correct.

Dated this 15th day of January 2006 at Seward Alaska.

_____

I hereby certify that a copy of the above declaration was mailed first class to Marylin J Kamm at: Attorney Generals Office P.O. Box 110300 Juneau Alaska 99811. On January 16th 2006.

_____
                    Mark Daniel Nason pro se

7