Marilyn J. Kamm
Assistant Attorney General
Department of Law
Criminal Division Central Office
P.O. Box 110300
Juneau, AK  99811
(907) 465-3428
FAX:  (907) 465-4043
Alaska Bar No. 7911105
Attorney for Defendants Turnbull,
Houser & Elde

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| Mark Daniel Nason,            ) | |
|             Plaintiff,    ) | |
| vs.            ) | |
| Craig Turnbull, et al.,            ) | |
|             Defendants.    ) | |
| _____ ) | Case No. A04-169 CV (TMB) |

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

        Plaintiff's opposition fails to show that his retaliation allegations, if true, justify an award of punitive damages. Many of his claims in his opposition are incorrect. His exhibits are irrelevant and inadmissible.

        While plaintiff's allegations in the complaint were presumed true for purposes of defendants' motion, his allegations made under oath in his opposition have no such presumption and several are untrue. His claim that defendants declined to participate in the discovery process by claiming security concerns in response to his interrogatories is

Reply to Opposition to Motion for Summary Judgment
*Nason v. Turnbull et al.,* Case A04-169 CV (JKS)
Page 1 of 6.

false. Defendants initially objected to his interrogatories because they were untimely. See Exhibit A, Response to Plaintiff's Interrogatories. They also objected to them on several other grounds, but none of them were objected to on the basis of security concerns. Exhibit B, Opposition to Plaintiff's Motion to Compel. The end result of the hearing before Magistrate Judge Roberts on his motion to compel answers to interrogatories was the denial of his motion to compel. *See* docket 48.

Although Nason claims that the move to the cell was "significant" to him and that he stood stationary "in the center of the grossly contaminated cell for 3 hours," it is interesting to note that he refused to shower the morning of the day he was moved into the cell and every day for the next several days. See Affidavit of Mary Sandy, Exhibit C, pp. 1-2,5-6. If the move to the cell had been that "significant" to him and if the cell were grossly contaminated, one would have expected him to shower at the first available opportunity. Yet he refused to shower when given the opportunity. *Id.*

Inmate misconduct with feces and bodily fluids is not an uncommon event, and Nason himself has engaged in such misconduct. The prohibited conduct for prisoners is set forth in 22 AAC 05.400. 22 AAC 05.400©(17) prohibits throwing urine or fecal matter on or at a staff member. Nason has been written up for assaulting or attempting to assault officers with body fluid and feces, collecting urine in containers in his cell, threatening to throw feces and urine in an officer's mouth and putting urine in an officer's cup of coffee. See Exhibit D. In this case the feces was on the walls. In the prison setting, and with Nason's own history of misconduct, being moved to a soiled cell is not

Reply to Opposition to Motion for Summary Judgment
*Nason v. Turnbull et al.*, Case A04-169 CV (JKS)
Page 2 of 6.

as significant to him as it would be to a non-prisoner who is not exposed to such conduct on a regular basis.

Although plaintiff claims that he attempted to include an affidavit "based upon personal knowledge from inmate John Bright on 1-8-06" he fails to state the subject matter and content of that affidavit. John Bright has no personal knowledge of Nason's transfer on October 3, 2004. Bright was an inmate at another facility, Cook Inlet Pretrial Center, from August 31, 2004 to November 1, 2005. See Affidavit of Mary Sandy, Exhibit E.

Nason's maximum custody level is relevant to the timing of his move to and from cell C-1. Once the decision was made to move him to another cell, it was necessary to find two officers who were available to do the actual move. Nason was a maximum custody prisoner on October 3, 2004. 22 AAC 05.271(b)(5) identifies the level of custody and degree of staff supervision appropriate for maximum custody.

> (5) Maximum custody -- assignment to maximum custody indicates that a prisoner requires the maximum level of supervision available within the facility due to being identified as an escape risk, the most assaultive, predatory, riotous, or seriously disruptive to the orderly administration of the facility. A maximum custody prisoner must be placed in secure housing with very limited program activities, with maximum supervision within the secure perimeter of the facility. Maximum custody prisoners are not eligible for furlough, and *movement within the facility requires two escorting officers using restraints as necessary and appropriate.* ...

22 AAC 05.271(b)(5)(emphasis added).

The segregation logs for October 3, 2004, show the sequence of inmate moves to and from cells C-1 and cell C-2. Exhibit C, pp. 1-2. The log reports that inmate Hendrix was removed from cell C-1 at 12:25 pm. Inmate Colello, who occupied cell C-2,

Reply to Opposition to Motion for Summary Judgment
*Nason v. Turnbull et al.*, Case A04-169 CV (JKS)
Page 3 of 6.

was moved from his cell at 12:30 pm, shortly before Nason was moved. Nason was moved from cell B-1 to cell C-1 at 12:35 pm. *Id.*

Nason's maximum custody status was also relevant to his move from his cell so that repairs could be made. There is no formal policy and procedure on prisoner relocation caused by needed repairs to a cell. See Second Affidavit of Craig Turnbull. Nason's claim that the only time an inmate is relocated to the Charlie mod lower tier is when his behavior warrants it is incorrect. Prison staff has to be flexible and use whatever cells are available, including the lower tier cells of Charlie mod. *Id.*

Plaintiff's Exhibit 1, the alleged response to a cop-out by Assistant Superintendent Tom Reimer, is inadmissible to show the defendants, Sgt. Elde and CO Houser, acted with "evil intent" when they transferred him into an allegedly dirty cell. First of all, Mr. Reimer is not a party to the lawsuit. Secondly, the cop-out does not pertain to the incident in question; it pertains to some cartoon designs by Nason.

Plaintiff's Exhibit 2 is also inadmissible. First of all, it is irrelevant. It pertains to Claim 1 and not to the claim at issue, Claim 2. Secondly, while Galindo-Rivera's infraction involved the destruction of state property, it does not appear to have involved inmate "fishing." Thirdly, it does not show that defendants lied in their affidavits. Plaintiff has offered no evidence that this inmate has a criminal record and disciplinary history comparable to his record. Moreover, it was Standards Sgt. Bruning, who is not a party to this lawsuit, who described in detail the typical consequences of inmates caught fishing. See docket 37, Affidavit of Sgt. Bruning.

Reply to Opposition to Motion for Summary Judgment
*Nason v. Turnbull et al.*, Case A04-169 CV (JKS)
Page 4 of 6.

Plaintiff's request for reconsideration is untimely. D.Ak.LR.59.1(b)(1) provides that a motion for reconsideration of an order must be filed not later than five days after the entry of order. Judge Singleton entered his order on September 27, 2005. *See* docket 54. Plaintiff's request is more than three months late. It is also procedurally flawed. A motion for reconsideration should not be embedded in an opposition to a motion for summary judgment.

However, if the court does reconsider Judge Singleton's order granting summary judgment on plaintiff's first claim, then the defendants would ask that the court also reconsider the denial of the defendants' motion for summary judgment as to Nason's second claim. Defendants also seek leave to file a formal motion for reconsideration that includes their grounds for the request.

Defendants respectfully request that this court grant them summary judgment on the punitive damages claim.

Dated this 10th day of March, 2006, at Juneau, Alaska.

DAVID W. MÁRQUEZ
ATTORNEY GENERAL

By: s/Marilyn J. Kamm, ABA 7911105
State of Alaska
Department of Law
Criminal Division Central Office
PO Box 110300
Juneau, AK  99811
Phone: (907) 465-3428
Fax: (907) 465-4043
Marilyn_Kamm@law.state.ak.us

Reply to Opposition to Motion for Summary Judgment
*Nason v. Turnbull et al.*, Case A04-169 CV (JKS)
Page 5 of 6.

I certify that on March 10, 2006, I caused to be
mailed a true and correct copy of the foregoing
via the U.S. Post Office to:

    Mark Nason
    SCCC
    Box 5001
    Seward, AK  99664-5001

Marilyn J. Kamm
State of Alaska
Department of Law
Criminal Division Central Office
PO Box 110300
Juneau, AK  99811
Phone: (907) 465-3428
Fax: (907) 465-4043
Marilyn_Kamm@law.state.ak.us

Reply to Opposition to Motion for Summary Judgment
*Nason v. Turnbull et al.,* Case A04-169 CV (JKS)
Page 6 of 6.