IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK DANIEL NASON,<br><br>            Plaintiff,<br><br>    vs.<br><br>CRAIG TURNBULL, et al.,<br><br>            Defendants. | Case No. 3:04-cv-169   TMB<br><br>O R D E R |

     Plaintiff filed a Prisoner's Complaint Under the Civil Rights Act, 42 U.S.C. § 1983, on August 10, 2004, alleging one count of cruel and unusual punishment at the hands of an Officer A. Houser, who was acting under the instructions of Sergeant Gary Elde, his immediate supervisor, as well as Superintendent Craig Turnbull.  Docket 2 at 3.  Among other things, Plaintiff alleged that he was stripped of all clothing and bedding on June 29, 2004, and issued only a "suicide gown" for a period of seven days, despite the fact that he was not on suicide watch.  Id.  Among his claims for relief, Plaintiff sought  $5,000 in punitive damages.  Id. at 9.

     Plaintiff  filed a motion to amend his Complaint on March 2, 2005, which was granted. Docket nos. 24 & 27.  The Second Amended Complaint added a second cause of action alleging that Defendants Elde and Houser retaliated against him for the filing of this lawsuit by assigning him to a cell contaminated with human feces contributed by a former inmate of the cell.[1]   Docket 28 at 4.

     On September 27, 2005, after consideration of the Report and Recommendations of the magistrate judge, District Court Judge James Singleton issued an Order denying Plaintiff's motion for summary judgment, and Granting in part Defendant's cross-motion for summary judgment. Docket 54.  Judge Singleton concluded that Plaintiff "has come forward with sufficient evidence to

---

[1] Superintendent Turnbull is not named as a party in Plaintiff's only remaining claim.

defeat the defendant's motion for summary judgment on the retaliation claim.  Nason relies primarily on suspect timing to establish his retaliation claim, as well as the general belief among the correctional officers that he was a dangerous troublemaker with a long history of criminal violations and disciplinary infractions.  Coupling these allegations with the undisputed fact that the cell where Nason was transferred was in fact contaminated with human excrement, is sufficient to defeat summary judgment." Id., (citations omitted).  Judge Singleton's order effectively eliminated all issues except the retaliation issue.[2]

On September 28, 2005, this matter was certified ready for trial.  Docket 55.  Plaintiff then requested appointment of counsel, (Docket 56), while Defendants moved for leave to file a motion for summary judgment on the issue of punitive damages.[3]  Docket 57.

The matter was again referred to the magistrate judge, who noted that the appointment of counsel in a matter brought under provision of the Civil Rights Act is discretionary.  Docket 59.  However, "should this case proceed to trial, plaintiff may renew his request for court-appointed counsel." Id.  Judge Singleton then issued an order allowing Defendants to file a summary judgment motion on the issue of punitive damages.  Docket 60.

Shortly after the motion for summary judgment on punitive damages was filed, (Docket 61), this matter was transferred to the undersigned.  Docket 63.  The matter has been fully briefed.  Plaintiff has opposed the Motion.  Docket 64.  Defendants have Replied.  Docket nos. 70, 71, & 72.  Plaintiff has filed a sur-reply, (Docket 75), and Defendants have moved to strike the sur-reply.  Docket 76.  The Court has considered the foregoing, and enters the following order.

## **Discussion**

---

[2] In the body of his Opposition to the Motion for Summary Judgment regarding punitive damages, Plaintiff requests reconsideration of Judge Singleton's dismissal of Count 1. Docket 64.  Defendants correctly observe that such a request for reconsideration is untimely under Local Rule 59.1(b)(1).

[3] Defendants noted that "Plaintiff concedes that he is entitled to no compensatory damages as a result of defendants' alleged conduct.  *See* docket 28, p.9.  Settlement has not been seriously explored; however, it is deemed to be remote."  Docket 57.

Defendants move for summary judgment on the issue of punitive damages, noting that "plaintiff concedes that he was not damaged by the events. . . He does not seek any compensatory or nominal damages." Docket 61 at 2. For purposes of this motion, Defendants state that Plaintiff's factual allegations are not disputed. Docket 61 at 3.

**Facts**

Plaintiff resides at Spring Creek Correctional Center, ("SCCC"), a maximum security prison. On October 21, 2004, he filed a grievance complaining about an incident that occurred on October 3rd. Docket 61, Exhibit B. Nason claims that on October 3, 2004, as retaliation for filing this lawsuit, he was placed in a cell that was contaminated with human excrement. He was not moved for approximately two to three hours. Id. This gave rise to the retaliation claim in Count 2 in this matter - the only claim remaining. Nason seeks punitive damages from the correctional officers for his three-hour stay in the filthy cell. Defendants do not dispute that Nason was placed in a filthy cell for two to three hours.

**Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56( c). The moving party bears the initial burden of proof for showing that no fact is in dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets that burden, then it falls upon the non-moving party to refute with facts which would indicate a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Summary judgment is appropriate if the facts and allegations presented by a party are merely colorable, or are not significantly probative. Id., See also, In re Lewis, 97 F.3d 1182, 1187 (9th Cir. 1996); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1995).

**Threshold for Punitive Damages**

The Supreme Court addressed the awarding of punitive damages in §1983 actions in Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625 (1983). The Wade court, relying on the Restatement

(Second) of Torts (1977), noted that "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Id., at 46-47.  Ultimately, the Wade court concluded that "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." Id., at 51.  The Court clarified, however, that punitive and compensatory damages are not equally available to a plaintiff, even if this threshold is met.  Compensatory damages are mandatory, and must be awarded once liability is found.  However, once the threshold for punitive damages is met, the fact-finder must also find that the conduct merits a punitive award, which is "a discretionary moral judgment." Id., at 52.

Defendants argue that Nason's claim of retaliation does not meet the threshold for an award of punitive damages.  Docket 61 at 6-9.  Specifically, they argue that Plaintiff has not met the threshold showing of "evil motive or intent" or "reckless or callous indifference to the federally protected rights of others," and that therefore the fact finder[4] cannot consider an award of punitive damages.  Docket 61 at 7.  In support, Defendants rely on Spruytte v. Haffner, 181 F.Supp.2d 736 (W.D.Michigan 2001), where the court found the defendant correction officers had violated the prisoners' First Amendment rights, but that the prisoners were not entitled to punitive damages. Defendants further argue that the fact that Plaintiff did not file his grievance for 18 days after the incident is indicative that it was not a significant event that warrants punitive damages.

In response, Plaintiff argues that despite his delay in filing his grievance, the incident was clearly significant, as he amended his complaint in federal court to seek damages for the incident. Docket 64.  Plaintiff notes that he delayed filing a written grievance for fear of further retaliatory conduct.  Id.  Furthermore, grievances are only required to be filed within 30 days of the incident. Id.  Plaintiff's Opposition cites other unrelated incidents that he says are indicative of the correctional officers' "evil intent" or "reckless or callous indifference to the federally protected rights of others."  Id.

---

[4] There has been no request for a jury in this case.

4

Defendants suggest that Plaintiff has "fail[ed] to show that his retaliation allegations, if true, justify an award of punitive damages." Docket 70. They note that his allegations in his opposition cannot be presumed true for purposes of the summary judgment motion, and they make several new arguments in their Reply.[5] Specifically, they suggest that "misconduct with feces and bodily fluids is not an uncommon event [in the prison setting], and Nason himself has engaged in such misconduct."[6] Docket 70 at 2. They argue that Plaintiff's failure to shower for several days after removal from the contaminated cell is indicative of the fact that the incident was not as outrageous as he now suggests. Id. Defendants suggest that "in the prison setting, and with Nason's own history of misconduct, being moved to a soiled cell is not as significant to him as it would be to a non-prisoner who is not exposed to such conduct on a regular basis." Docket 70 at 3.

In Plaintiff's sur-reply, he argues that this matter concerns the allegedly unconstitutional conduct of the Defendants, not his own alleged conduct on any other occasion.[7] Docket 75. Plaintiff further suggests that condition of the showers in the Charlie module were the reason he delayed bathing. Docket 75 at 2.

Defendants suggest that Nason's maximum custody level is relevant to the timing of his move to and from cell C-1, but they fail to explain why he was moved to a dirty cell instead of a clean cell nearby. Docket 70. Furthermore, Defendants' reliance on Spruytte is misplaced. In that case, the retaliatory conduct by prison officials was a transfer to another facility. 181 F.Supp.2d, at 741. The court ultimately awarded compensatory damages, finding that "the only basis for an award of economic damages is the difference between what Plaintiffs were paid for their library jobs at the Facility and what they were paid for the jobs which they held subsequently at the prisons

---

[5] In light of the new allegations in their Reply brief, the Court declines to strike Plaintiff's sur-reply.

[6] Defendants attach exhibits that indicate Nason has been written up for assaulting or attempting to assault officers with body fluid and feces. Id., Exhibit D.

[7] Plaintiff's sur-reply further discusses his relationship with his wife, a former corrections officer. Docket 75. While conceding its irrelevance to the matter before the Court, he suggests that much of his mistreatment by correctional officers within SCCC is a result of his marriage to one of their former colleagues.

5

to which they were transferred." Id., at 744.  The plaintiffs in Spruytte were awarded approximately $3,000 each in lost wages.  However, upon consideration of punitive damages, the court cited Wade and noted that "although punitive damages are available . . . the Court declines to award punitive damages because the evidence does not demonstrate that Defendants' conduct was the result of evil motive or intent or callous indifference to Plaintiffs' federally protected rights." Id., at 745.

      Contrary to the assertion by Defendants that this case is comparable to Spruytte, the conduct alleged in Spruytte, transfer to another facility resulting in lost wages, cannot compare to the housing of a prisoner in a cell containing copious amounts of human excrement.  The Supreme Court in Wade noted that most states, under common law, recognize that "punitive damages in tort cases may be awarded not only for actual intent to injure or evil motive, but also for recklessness, serious indifference to or disregard for the rights of others, or even gross negligence." Smith v. Wade, 461 U.S. 30, 46-47 (citations omitted).  The Wade court specifically declined to adopt a different standard for §1983 cases than it applied to ordinary tort cases.  Id., at 49.  Accordingly, Defendants' suggestion that "misconduct with feces and bodily fluids is not an uncommon event" and their allegation that "Nason himself has engaged in such misconduct" is not persuasive.  Docket 70 at 2.

      Defendants, as the moving party, bear the initial burden of proof for showing that no fact is in dispute.  Celotex, 477 U.S., at 325.  If Defendants had met that burden, then it would fall upon Nason to refute with facts which would indicate a genuine issue of fact for trial.  Liberty Lobby, 477 U.S., at 250.  The Court finds that Defendants have not shown that the facts and allegations presented by Plaintiff's claim of retaliation are merely colorable, or are not significantly probative.  Rather, Defendants have admitted the underlying facts: that Plaintiff was placed in a cell that contained a significant amount of human excrement, and that the officers who approved of such housing were the same officers that were the Defendants in this case.  As Judge Singleton observed, "Nason relies primarily on suspect timing to establish his retaliation claim, as well as the general belief among the correctional officers that he was a dangerous troublemaker with a long history of criminal violations and disciplinary infractions.  Coupling these allegations with the undisputed fact

that the cell where Nason was transferred was in fact contaminated with human excrement, is sufficient to defeat summary judgment." Docket 54 (citations omitted).  The Wade court concluded that "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." 461 U.S., at 51.  Here, the question remains whether the officers' actions were in fact "retaliation," and the result of "evil motive" or "reckless indifference," rather than some inadvertence or necessity.  If the Court concludes that there was evil motive or reckless indifference, the threshold requirement for a consideration of punitive damages has been met.  If that threshold is met, the Court will use its "discretionary moral judgment" to determine the amount of any punitive damages, if any.   Summary Judgment is not appropriate based on the information available.

## **Order**

In light of the foregoing, it is hereby ordered that Defendant's Motion for Summary Judgment on the issue of punitive damages, (Docket 61), is DENIED.  The Motion to Strike, (Docket 76), also is DENIED.  Plaintiff shall have 30 days from the date of this Order to renew his motion for appointed counsel.

Dated at Anchorage, Alaska, this 8th day of August, 2006.

/s/ Timothy Burgess
Timothy M. Burgess
United States District Judge